[No. 43449-1-II.    Division Two.    March 25, 2014.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT WAYNE RICE, *Appellant*.

*Lisa E. Tabbut*, for appellant.

*Anthony F. Golick, Prosecuting Attorney*, and *Rachael R. Probstfeld, Deputy*, for respondent.

¶1 WORSWICK, C.J. — Robert Wayne Rice appeals his convictions and sentence for felony harassment—death threat and for violation of a civil antiharassment protection order. Rice argues that (1) insufficient evidence supports his conviction for felony harassment—death threat, (2) the trial court improperly instructed the jury on the elements of violation of a civil antiharassment protection order, and (3) the trial court ordered an impermissibly long period of probation. The State concedes that insufficient evidence supports Rice's conviction for felony harassment. In the published portion of this opinion, we reverse the trial court's imposition of 48 months of probation and remand for resentencing. In the unpublished portion of this opinion, we accept the State's concession and reverse Rice's conviction for felony harassment—death threat, but we affirm Rice's conviction for violation of a civil antiharassment protection order.

## FACTS

¶2 While Robert Wayne Rice served time at the Clark County Jail he met Jody Beach, a custody officer at the jail.

Rice subsequently made unwelcome advances toward Beach, such as sending her flowers, writing her notes, and asking her out to breakfast. In response to Rice's unwelcome advances toward Beach, a Clark County Sheriff's sergeant instructed sheriff's deputies Jason Hafer and Scott Bain to tell Rice that Beach did not want Rice to contact her.

A. *Rice's Threats To Kill Bain*

¶3 Hafer and Bain met Rice when he was at the courthouse on unrelated business. Hafer walked with Rice into an interview room in the courthouse and there told Rice that Beach did not want Rice to contact her. The conversation between Hafer and Rice became heated, at which point Bain entered the conference room and informed Rice that Beach did not want Rice to contact her. Rice responded by repeatedly threatening to kill Bain. Bain responded by stepping back and unsnapping the holster on his stun gun. Rice continued to repeat his threats to kill Bain, at which time Bain arrested Rice for felony harassment—death threat (felony harassment).

¶4 Bain later testified as to how he felt when Rice threatened to kill him:

> [Rice] was causing me fear of an assault.
>
> . . . .
>
> Somebody who's that angry and upset with me, telling me they're going to kill me, causes me concern.
>
> . . . .

2A Verbatim Report of Proceedings (VRP) at 298-99.

> [Rice] was in a different position that day. He was not quiet, content, sitting peacefully. He was extremely angry, livid. A—a wild look to him. His—his eyes—he was extremely aggressive.

2A VRP at 311.

B. *Beach's Civil Antiharassment Protection Order*

¶5 At a hearing attended by both Beach and Rice, a court granted Beach a civil antiharassment protection order

(antiharassment order) against Rice under chapter 10.14 RCW. During the time that this antiharassment order was effective, Rice wrote a letter to Beach and sent it to the jail.

## C. *Trial and Sentencing*

¶6 The State charged Rice with felony harassment for threatening to kill Bain. The State also charge Rice with misdemeanor stalking for his advances toward Beach and with violation of an antiharassment order under RCW 10.14.120 and RCW 10.14.170 for writing a letter to Beach and sending it to the jail.

¶7 The trial court provided the following instruction to the jury on the charge of violation of an antiharassment order:

> To convict the defendant of the crime of violation of a court order, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That between January 20, 2011 and January 23, 2012, there existed a protection order applicable to the defendant;
>
> (2) That the defendant knew of the existence of this order;
>
> (3) That on or about said date, the defendant knowingly violated a restraint provision of the order prohibiting acts or [a] restraint provision of the order prohibiting contact with a protected party; and
>
> (4) That the defendant's act occurred in the State of Washington.
>
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
>
> On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

Clerk's Papers at 26. This jury instruction is based on an instruction from the *Washington Pattern Jury Instructions*, designed for violations of orders under RCW 26.50-.110(1)(a), rather than violations of an antiharassment

order under RCW 10.14.120 and RCW 10.14.170. 11 WASH-INGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 36.51 cmt. at 635 (3d ed. 2011). Rice did not object to this instruction at trial.

¶8 The jury convicted Rice of felony harassment, misdemeanor stalking, and misdemeanor violation of an antiharassment order under RCW 10.14.120 and 10.14.170. The trial court sentenced Rice to 90 days of time served on the felony harassment charge, to run concurrently with the sentence on the two misdemeanor charges. The trial court also sentenced Rice to 182 days for each of the two misdemeanor charges, to run consecutively.

¶9 The trial court suspended 184 days of this sentence and imposed 48 months of probation. Rice did not object to the 48 months of probation at sentencing. Rice appeals (1) his sentence to 48 months of probation, (2) his conviction for felony harassment, and (3) his conviction for violation of an antiharassment order.

## ANALYSIS

### SENTENCING: PROBATION

¶10 Rice argues that the trial court erred in sentencing Rice to 48 months of probation in violation of RCW 9.95-.210(1)(a). We agree.

A. *Rules Governing Our Interpretation*

■ ■ ¶11 A trial court lacks inherent authority to suspend a sentence. *State v. Gibson*, 16 Wn. App. 119, 127, 553 P.2d 131 (1976) (citing *State ex rel. Lundin v. Superior Court*, 102 Wash. 600, 174 P. 473 (1918)). Thus, when the trial court does suspend a sentence, it must exercise its authority in the manner provided by the legislature. *Gibson*, 16 Wn. App. at 127. A defendant may challenge a sentence imposed in excess of statutory authority for the first time on appeal because "a defendant cannot agree to

punishment in excess of that which the Legislature has established." *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 873-74, 50 P.3d 618 (2002); *State v. Anderson*, 58 Wn. App. 107, 110, 791 P.2d 547 (1990).

¶12 Statutory interpretation is a question of law that we review de novo. *State v. Franklin*, 172 Wn.2d 831, 835, 263 P.3d 585 (2011). When interpreting the meaning and purpose of a statute, our objective is to determine the legislature's intent. *State v. Jones*, 172 Wn.2d 236, 242, 257 P.3d 616 (2011). Effect is given to the statute's plain meaning when it can be determined from the statute's text. *Jones*, 172 Wn.2d at 242.

¶13 If the statute is still susceptible to more than one interpretation after we conduct a plain meaning review, then the statute is ambiguous and we rely on statutory construction, legislative history, and relevant case law to determine legislative intent. *Jones*, 172 Wn.2d at 242. We construe statutes in a manner that avoids strained or absurd consequences. *State v. Merritt*, 91 Wn. App. 969, 973, 961 P.2d 958 (1998).

¶14 The rule of lenity applies to situations where more than one interpretation can be drawn from the wording of a statute. *State v. Snedden*, 149 Wn.2d 914, 922, 73 P.3d 995 (2003). "Under the rule of lenity, the court must adopt the interpretation most favorable to the criminal defendant." *State v. McGee*, 122 Wn.2d 783, 787, 864 P.2d 912 (1993).

B. *RCW 9.95.210(1)(a) and* State v. Parent

¶15 RCW 9.95.210(1)(a) grants the trial court authority to suspend the sentence of a criminal defendant. RCW 9.95.210(1)(a) states in relevant part:

> [T]he superior court may suspend the imposition or the execution of the sentence and may direct that the suspension may continue upon such conditions and for such time as it shall designate, *not exceeding the maximum term of sentence or two years, whichever is longer.*

(Emphasis added.) Division One of this court interpreted the meaning of the phrase " 'the maximum term of sentence' " in *State v. Parent*, 164 Wn. App. 210, 213, 267 P.3d 358 (2011) (quoting RCW 9.95.210(1)).

¶16  In *Parent*, Kerry Parent pleaded guilty to two counts of misdemeanor assault. 164 Wn. App. at 211. The trial court sentenced Parent to 12 months in prison for each assault count, to run consecutively, totaling 24 months in prison. *Parent*, 164 Wn. App. at 211. The trial court suspended 16 months of this prison term and imposed 24 months probation for each count, to run consecutively, totaling 48 months of probation. *Parent*, 164 Wn. App. at 211. Parent appealed, arguing that "the maximum term of sentence" referred to the one "sentence" at the end of the case—regardless of the number of counts—thus limiting the trial court to sentencing Parent to 24 months of probation in the entire case. *Parent*, 164 Wn. App. at 212-14. The State argued that "the maximum term of sentence" referred to one additional "sentence" for each count in a case, allowing the trial court to sentence Parent to an additional 24 months of probation for each of Parent's two assault counts. *Parent*, 164 Wn. App. at 212.

¶17  Division One of this court held that the text of RCW 9.95.210(1)(a) could equally support either side's interpretation of "the maximum term of sentence." *Parent*, 164 Wn. App. at 213. Thus Division One applied the rule of lenity and held that RCW 9.95.210(1)(a) limits the trial court to sentencing the defendant to 24 months of probation or the total combined prison sentence in a given case regardless of the number of counts. *Parent*, 164 Wn. App. at 213-14.

C. *Application in Rice's Case*

¶18  Here, the parties' arguments mirror the arguments in *Parent*. Rice argues that we should follow *Parent* and hold that RCW 9.95.210(1)(a)'s phrase "the maximum term of sentence" refers to the one overall sentence within a single case, regardless of the number of counts that the

defendant is convicted of in that case, limiting the probationary period to 24 months. The State responds that we should not follow *Parent* because the phrase "the maximum term of sentence" refers to the trial court's "sentence" for a single count, and each additional count in the case allows for an additional "sentence" within that case.

¶19 We follow Division One by holding that RCW 9.95-.210(1)(a) is ambiguous and that both parties provide equally plausible interpretations, and thus the doctrine of lenity supports Rice's interpretation.

¶20 RCW 9.95.210(1)(a)'s text does not make clear what the legislature intended. The legislature could have wanted to prevent a trial court from burdening a defendant with too much probation for a single offense by tying the length of probation to each single offense committed. This would support the State's interpretation. But equally possible, the legislature could have wanted to prevent a trial court from burdening a defendant with a probation that runs too far into the defendant's future by tying the length of probation to the date of sentencing. This would support Rice's interpretation.

¶21 RCW 9.95.210(1)(a) does not contain an explicit reference to multiple counts, nor does it contain explicit words referencing aggregation of counts such as "total," "aggregate," or "combined." But it is exactly the lack of these explicit references that makes the phrase "the maximum term of sentence" in RCW 9.95.210(1)(a) ambiguous rather than clear.[1]

¶22 The State attempts to resolve the ambiguity by citing RCW 9.95.210(2), RCW 9.95.010, and RCW 9.95.100.

---

[1] The State cites *Mortell v. State* and argues that because "sentence" is singular in RCW 9.95.210(1)(a), it must have referenced a single count, rather than a single case. 118 Wn. App. 846, 850, 78 P.3d 197 (2003). But in *Mortell*, the court held that the phrase "a gross misdemeanor" referenced a single crime. *Mortell*, 118 Wn. App. at 850. This is because it referenced "a" "misdemeanor," which inarguably references a single criminal offense. *See Mortell*, 118 Wn. App. at 850. Here, the fundamental ambiguity is that the singular word is not "misdemeanor" but, rather, is "sentence." "Sentence" could refer to one sentence per count, or it could refer to one sentence per case. Either way, the word "sentence" would be in the singular.

But these statues do not resolve the ambiguity of RCW 9.95.210(1)(a).

¶23 RCW 9.95.210(2) uses the word "offense" in the singular tense with a clear intent to reference a single count. RCW 9.95.210(2) states in relevant part:

> In the order granting probation and as a condition thereof, the superior court may in its discretion imprison the defendant in the county jail for a period not exceeding one year and may fine the defendant any sum not exceeding the statutory limit for the offense committed.

RCW 9.95.210(2) does discuss "offense" in reference to individual offenses, as it relates to the statutory limits on monetary penalties. But RCW 9.95.210(2) does not use the words "sentence" or "maximum" in any context. In fact, it uses the phrase "statutory limit" when it could have instead used the word "maximum." The lack of similarity between the language of the two provisions limits RCW 9.95.210(2)'s ability to resolve the ambiguity in RCW 9.95.210(1)(a)'s use of the phrase "the maximum term of sentence."

¶24 While RCW 9.95.010 and RCW 9.95.100 use the phrase "maximum term," both of these statutes preceded the Sentencing Reform Act of 1981,[2] and neither has been applicable since 1984. Thus these statutes are part of an outdated legal regime for sentencing. Furthermore, while these two statutory provisions concern prison sentences and release, they do not address the suspension of sentences. *See* RCW 9.95.010, .100. Thus it is not clear that the legislature intended to use the definition of "maximum term" found in these outdated statues when it codified RCW 9.95.210(1)(a).

¶25 Because RCW 9.95.210(1)(a)'s phrase "the maximum term of sentence" is ambiguous, and because both parties' interpretations plausibly describe its meaning, the doctrine of lenity supports Rice's interpretation of the

---

[2] Ch. 9.94A RCW.

statute. Thus here, we hold that the trial court may order probation only for the defendant's combined total prison sentence or 24 months, whichever is longer.[3]

¶26 Here, Rice was properly convicted of two misdemeanor convictions: misdemeanor stalking and violation of an antiharassment order. "[T]he maximum term of sentence" for these two crimes is not more than 24 months. *See* RCW 9.95.210(1)(a). Thus, we hold that the trial court could sentence Rice to a maximum of only 24 months of probation under RCW 9.95.210(1)(a) and thus erred by sentencing Rice to 48 months of probation. We reverse the trial court's sentence of Rice to 48 months of probation and remand for resentencing consistent with this opinion. We address the remaining issues in the unpublished portion of this opinion.

¶27 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON and BJORGEN, JJ., concur.

---

[3] The State argues that this holding will lead to absurd results, because the trial court could sentence a defendant charged with the same counts to a longer period of probation than another defendant simply because the first defendant's claims were not consolidated into a single case. But it is not absurd to limit a court to a certain maximum across an entire case, because of the high chances that a single case will resolve all criminal causes of action related to a single set of related facts. This is particularly true in light of doctrines such as mandatory joinder and double jeopardy, which limit the State's ability to try claims against the same defendant on the same facts across multiple cases. *See* CrR 4.3; *State v. Turner*, 169 Wn.2d 448, 459, 238 P.3d 461 (2010); *State v. Elmore*, 154 Wn. App. 885, 899-900, 228 P.3d 760 (2010).